UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEAN PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 11-11207-JGD |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER
ON CROSS-MOTIONS REGARDING DENIAL OF
SUPPLEMENTAL SECURITY INCOME BENEFITS**

September 28, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff Dean Price ("Price") has brought this action pursuant to sections

205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3),

challenging the final decision of the Commissioner of the Social Security Administration

("Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits.

The matter is presently before the court on the plaintiff's "Motion to Reverse the

Decision of the Commissioner of Social Security" (Docket No. 12) and on the

"Defendant's Motion to Affirm the Commissioner's Decision" (Docket No. 15).  At issue

is whether the Administrative Law Judge ("ALJ"), in reaching his decision that Price was

not disabled, improperly translated Price's "moderate" mental impairments into work

related restrictions that were incorporated into the ALJ's assessment of Price's residual

functional capacity and used in a hypothetical question that was posed to a vocational

expert, without the support of a medical source's opinion.  Because this court finds that

Price's contention of error is not supported by the record, and the ALJ's assessment of

Price's mental residual functional capacity was based on the opinions of two consulting

psychologists, the plaintiff's motion to reverse is DENIED and the Commissioner's

motion to affirm is ALLOWED.

## II.   <u>STATEMENT OF FACTS</u>[1]

Price was born on August 4, 1961, and has a high school education.  (Tr. 28).

Although he was incarcerated for a significant portion of his adult life, Price briefly held

jobs as a painter and a telemarketer.  (Tr. 29-30, 149, 219-20).  The plaintiff claims that

he was terminated from both jobs after very short periods of employment due to

altercations that he had with his boss.  (Tr. 29-30, 33-34).  He also claims that in addition

to his difficulties dealing with authority, he suffers from a number of physical and mental

conditions, including anxiety, depression, knee pain, back pain, and migraine headaches,

which conditions preclude him from working.  (Tr. 31-32).

The record reveals that Price has a significant history of chronic drug and alcohol

abuse, but that he ceased using substances on March 19, 2010, when he entered a

residential treatment program.  (Tr. 38-41, 189-90).  According to the plaintiff's medical

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr.
__."  The ALJ's decision shall be cited as "Dec." and can be found beginning at Tr. 7.

records, Price has been diagnosed consistently with polysubstance abuse and depression, and certain evaluations indicate that he suffers from post traumatic stress disorder ("PTSD") as well.  (See, e.g., Tr. 179, 190, 332-33).  Nevertheless, there also is evidence which indicates that the plaintiff has normal cognitive functioning, responds well to anti-depressant medication, and is able to care for his personal hygiene, attend counseling sessions, keep meetings and appointments, and act appropriately in social settings.  (See, e.g., Tr. 269, 320, 332, 398, 402).

In addition to his mental impairments, Price has been diagnosed with certain physical impairments, including degenerative osteoarthritis of the knees and chronic back pain.  (Tr. 392-94).  Additionally, the plaintiff complains that he suffers from chronic headaches as the result of a head injury that he sustained while in prison.  (Tr. 320).  Price claims that the pain caused by his physical conditions, combined with his mental impairments, renders him incapable of maintaining employment.  (Tr. 55-56).

## **Procedural History**

Price protectively filed an application for SSI benefits on October 6, 2009, claiming that he had been unable to work since April 1, 2002 due to ankle, back and knee pain, depression, head trauma, migraine headaches, and PTSD.  (Tr. 143, 148).  The plaintiff's application was denied initially on February 19, 2010, and upon reconsideration on June 17, 2010.  (Tr. 68-73).  He subsequently requested and was granted a hearing before an ALJ, which took place on October 14, 2010.  (Tr. 24-63, 77-78, 97-

102).  Price, who was represented by counsel, appeared and testified at the hearing.  (Tr.

28-56).  A vocational expert ("VE") also appeared at the hearing and provided testimony.

(Tr. 57-60).

During the VE's testimony, the ALJ asked the VE a number of hypothetical

questions that were designed to determine whether jobs exist in the national economy for

an individual with the claimant's age, education, work experience, and the residual

functional capacity ("RFC") that Price would have if he stopped abusing substances.

(See Dec. 13, Tr. 19; Tr. 57-59).  Price contends that the hypothetical questions were

invalid because the mental limitations of the individual described in those questions were

based on the ALJ's own translation of the medical evidence into work restrictions rather

than on the opinion of a mental health professional.  As detailed below, this court finds

that the mental limitations included by the ALJ in his hypothetical questions were based

on medical source opinions, and that therefore, his questions were appropriate.

In the first hypothetical, the ALJ asked the VE to assume:

> that we are talking about a person who is 49 years old, high school
> graduate, has the work history that Mr. Price has as the telemarketer
> and let me ask you to assume that this person could perform work at
> the light exertional level with only occasional climbing, balancing,
> stooping, kneeling, crouching, or crawling.  This person would need
> to avoid concentrated exposure to hazards and let's assume this
> person could understand and remember simple instructions, could
> concentrate for two-hour periods over an eight-hour day on simple
> tasks, could interact [appropriately] with co-workers and supervisors,
> and could adapt to changes in the work setting.

(Tr. 57-58).  The ALJ then asked the VE to state whether a person with those abilities and limitations would be able to perform Price's past work as a telemarketer, and the VE responded affirmatively.  (Tr. 58).

The ALJ subsequently asked the VE to assume that the hypothetical person was limited to unskilled work, but that all the other facts were the same.  (Id.).  The VE testified that based on those assumptions, the individual would no longer be able to perform work as a telemarketer.  (Id.).  However, he stated that there would be other jobs in the national or regional economy that the individual could perform, including the unskilled, sedentary jobs of stuffer, such as a toy stuffer, and hand sealer, which would involve sealing medicines or liquids into a tube.  (Tr. 58-59).  The ALJ relied on this testimony in support of his determination that Price was not disabled.  (See Dec. 13; Tr. 19).

On January 28, 2011, the ALJ issued a decision denying the plaintiff's application for benefits.  (Dec. 13; Tr. 19).  The Decision Review Board selected Price's claim for review and affirmed the ALJ's decision on May 3, 2011.  (Tr. 1-5).  Thus, the plaintiff has exhausted all of his administrative remedies, and the case is ripe for review by this court pursuant to 42 U.S.C. § 405(g).

### The ALJ's Decision

In order to qualify for SSI benefits, Price had to establish that he was disabled on or after his application date.  See Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993).  In the instant case, the ALJ determined that from October 6,

2009, the filing date of Price's application, to March 19, 2010, the date when Price reportedly stopped using substances, the plaintiff was "under a disability," which is defined under the Social Security Act as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. 1-2; Tr. 7-8).  See also 42 U.S.C. § 1382c(a)(3)(A).  However, pursuant to Section 1382c of the Social Security Act, "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commis- sioner's determination that the individual is disabled."  42 U.S.C. § 1382c(a)(3)(J). Because the ALJ determined that Price's substance use disorder was a contributing factor material to his determination of disability during the time period from October 6, 2009 to March 19, 2010, the ALJ found that the plaintiff was not disabled for that period of time. (Dec. 2; Tr. 8).  He further concluded that absent substance abuse, Price had not been disabled at any time from the application filing date to the date of his decision on January 28, 2011.  (Id.).

There is no dispute that the ALJ, in reaching his decision that Price was not disabled, applied the five-step sequential evaluation required by 20 C.F.R. § 416.920. Moreover, there is no dispute that he appropriately conducted the analysis by first considering whether Price was disabled without separating out the impact of the plaintiff's substance abuse and then proceeding to determine whether Price would still be

disabled in the absence of such substance abuse.  See Kluesner v. Astrue, 607 F.3d 533,

537 (8th Cir. 2010) (explaining procedure for determining disability where there is

evidence of alcoholism or drug addiction); Bustamante v. Massanari, 262 F.3d 949, 955

(9th Cir. 2001) (same).  The procedure resulted in the following analysis, which is

detailed in the ALJ's "Findings of Fact and Conclusions of Law."  (See Dec. 4-13; Tr.

10-19).

     The first inquiry in the five-step process is whether the claimant is "engaged in

substantial gainful work activity[.]"  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

See also 20 C.F.R. § 920(b).  If so, the claimant is automatically considered not disabled

and the application for benefits is denied.  See id.  In the instant case, the ALJ determined

that Price had not engaged in substantial gainful activity since October 6, 2009, the date

of his application for benefits.   (Dec. Finding #1; Tr. 10).  Accordingly, the ALJ

proceeded to the next step in the analysis.

     The second inquiry is whether the plaintiff has a "severe impairment," meaning an

"impairment or combination of impairments which significantly limits [the claimant's]

physical or mental ability to do basic work activities[.]"  20 C.F.R. § 416.920(c).  If not,

the claimant is considered not disabled and the application for benefits is denied.  See

Seavey, 276 F.3d at 5.  Here, the ALJ concluded that Price suffered from several severe

impairments, including mild bilateral tricompartmental arthritis, obesity, depression,

anxiety, PTSD, and a history of polysubstance abuse up to March 19, 2010.  (Dec.

Finding #2; Tr. 10).  Therefore, his analysis continued.

The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations, in which case the claimant would automatically be found disabled.  See Seavey, 276 F.3d at 5; 20 C.F.R. § 416.920(d).  The ALJ found that for the period from October 6, 2009 to the plaintiff's reported sobriety date of March 19, 2010, Price's impairments, including his substance use disorders, met combined Listings 12.04 (affective disorders) and 12.09 (substance addiction disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Finding #4; Tr. 10).  Accordingly, he concluded that Price's substance abuse and depression, "taken together[,]" satisfied the listing requirements, and rendered the plaintiff disabled.  (See Dec. 5; Tr. 11).

The ALJ then proceeded to evaluate whether Price's drug addiction or alcoholism was a contributing factor that was material to the determination of disability by considering whether the plaintiff "would still [be] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1).  Specifically, he determined, at step two of the analysis, that if Price stopped using substances, his mild bilateral tricompartmental arthritis, obesity, depression, anxiety, and PTSD would continue to constitute severe impairments.  (Finding #4; Tr. 11).  However, at step three, the ALJ determined that if Price stopped using substances, his impairments would not meet any of the listings set forth in Appendix 1 of the Social Security regulations.  (Dec. Finding #5; Tr. 11).  While the plaintiff does not challenge this conclusion, a brief description of ALJ's findings at this stage is necessary in order to place the parties' dispute in context.

In reaching his conclusion at step three, the ALJ first determined that the plaintiff's physical limitations did not meet any of the relevant listings.  (Dec. 5; Tr. 11).  He then considered whether, in the absence of substance abuse, Price's mental impairments would meet or medically equal the criteria of Listings 12.04 for affective disorders or 12.06 for anxiety related disorders.  (Dec. 6; Tr. 12).  The ALJ determined that the severity of those impairments did not meet the listings because there was no evidence to establish the presence of the so-called "paragraph C" criteria,[2] and because the plaintiff's impairments did not satisfy the so-called "paragraph B" criteria, which require at least two of the following: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation.  (See Dec. 6-7; Tr. 12-13). Specifically, the ALJ found that with respect to the paragraph B criteria,  the plaintiff had no more than "moderate" limitations in his daily activities, "moderate" limitations in the area of social functioning, no more than "moderate" limitations in concentration, persistence or pace, and no repeated episodes of decompensation.  (Dec. 6; Tr. 12).

---

[2]  The ALJ explained that the evidence did not satisfy the "paragraph C" criteria because "[t]he claimant does not have a history of repeated episodes of decompensation; there is no medical evidence to indicate that the claimant has a 'residual disease process' resulting in such marginal adjustment that 'even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate'; and, there is no medical evidence to indicate that the claimant required a 'highly supportive living arrangement' in the past, or a need for such an arrangement in the future for his depressive symptoms."  (Dec. 6-7; Tr. 12-13).

Thus, he concluded that without the use of substances, Price's mental impairments were not sufficiently severe to establish disability at step three of the sequential analysis.

Because the ALJ determined that Price's impairments, without the use of substances, did not meet or equal any of the listed impairments, he proceeded to step four in the analysis. The fourth inquiry is whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" Seavey, 276 F.3d at 5. Accordingly, it was at this stage in the procedure that the ALJ determined Price's RFC, including the mental limitations on his ability to work that are at issue in this case.

Prior to rendering his findings as to the plaintiff's RFC, the ALJ stated that

> [t]he limitations identified in the "paragraph B" and "paragraph C" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Accordingly, the undersigned has translated the above "B" and "C" criteria findings into work-related functions in the residual functional capacity assessment below.

(Dec. 7; Tr. 13) (emphasis added). The ALJ then proceeded to make the following determination with respect to the plaintiff's RFC:

> For the period October 6, 2009, to the date of this decision, absent substance use, the claimant would have the [RFC] to perform light work with only occasional climbing, balancing, stooping, kneeling, crouching and crawling, and with a need to avoid concentrated exposure to hazards. The claimant could understand and remember simple and complex instructions, could concentrate for two-hour periods over the course of an eight-hour day on simple tasks, could

> interact appropriately with coworkers and supervisors and could
> adapt to changes in the work setting.

(Finding #6; Tr. 13).  By his motion, Price is challenging this conclusion on the grounds

that the ALJ improperly translated his findings that the plaintiff had "moderate" impair-

ments in certain areas of mental functioning into work related restrictions without the

support of a medical source's opinion.  This court disagrees, and finds that the ALJ's

mental RFC assessment was properly based on medical source opinions in the record.

In reaching his conclusion regarding Price's RFC absent substance use, the ALJ

provided a detailed description of the medical records relating to the plaintiff's physical

and mental impairments.  (Dec. 8-10; Tr. 14-16).  He also described the basis for his

findings, including the weight that he gave to the assessments of various physicians and

mental health professionals who examined the plaintiff or provided opinions based on a

review of the medical evidence.  (Dec. 10-12; Tr. 16-18).  With respect to the plaintiff's

mental impairments, the ALJ stated that he was basing his RFC assessment on the record

as a whole.  (Dec. 11; Tr. 17).  He further explained that he was giving great weight to

the assessments of Dr. Robbins and Dr. Derecho, both of whom were advising

psychologists to the Disability Determination Service.  (Dec. 8-9, 11; Tr. 14-15, 17).

According to the ALJ, Dr. Robbins completed a mental RFC assessment on February 4,

2010 in which he opined that absent substance abuse, Price "could understand and

remember simple and complex instructions, could concentrate for 2 hour periods over an

8 hour day on simple tasks, could interact appropriately, and could adapt to changes in

the work setting." (Dec. 9; Tr. 15). Subsequently, on March 25, 2010, Dr. Derecho affirmed Dr. Robbins' assessment. (Id.).

After explaining the basis for his RFC determination, the ALJ concluded that Price was unable to perform his past relevant work as a telemarketer even in the absence of substance use. (Finding # 7; Tr. 18). Consequently, the ALJ reached the fifth and last step in the sequential analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work experience and age, the claimant is capable of performing other work. See Seavey, 276 F.3d at 5; 20 C.F.R. § 416.920(g). If so, the claimant is not disabled. 20 C.F.R. § 416.920(g). At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey, 276 F.3d at 5. Here, the ALJ relied on the testimony of the VE to conclude that "if the claimant stopped the substance use, or maintained his sobriety after March 19, 2010, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy." (Dec. 13; Tr. 19). Consequently, the ALJ found that Price was not disabled. (Id.).

The plaintiff argues that the ALJ's reliance on the testimony of the VE was improper because the hypothetical questions that were put to the VE were based upon the ALJ's unsupported translation of medical evidence into work restrictions. However, because this court finds that the ALJ's RFC assessment was supported by substantial evidence, and the VE's testimony was based on hypothetical questions which

incorporated that assessment, this court also finds that the ALJ's reliance on the VE's

testimony was appropriate.

Additional factual details relevant to this court's analysis are described below.

## III.   ANALYSIS

### A.   Standard of Review

Price is seeking judicial review of the Commissioner's "final decision" pursuant to

the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act").  The Act provides in

relevant part that:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action .... The court shall have power to
> enter, upon the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the Commissioner
> of Social Security, with or without remanding the cause for a re-
> hearing.  The findings of the Commissioner of Social Security as to
> any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial

evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Richardson

v.Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting

Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st

Cir. 1991).

It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." The [Commissioner] may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Thus,

"the court's function is a narrow one limited to determining whether there is substantial

evidence to support the [Commissioner's] findings and whether the decision conformed

to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315,

319 (1st Cir. 1981). The Commissioner's decision must be affirmed, "even if the record

arguably could justify a different conclusion, so long as it is supported by substantial

evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir.

1987), cert. denied, 484 U.S. 1012, 108 S. Ct. 713, 98 L. Ed. 2d 663 (1988).

"Even in the presence of substantial evidence, however, the Court may review

conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts[.]'" Musto v. Halter, 135 F.

Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.

1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual

error, the court may reverse or remand such decision to consider new, material evidence

-14-

or to apply the correct legal standard."  Ross v. Astrue, Civil Action No. 09-11392-DJC,

2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

### B.    Adequacy of the RFC Assessment

The plaintiff argues that the ALJ's decision was not supported by substantial

evidence because his assessment of Price's mental RFC was based upon his own

interpretation of the medical evidence.  In particular, he contends that the ALJ erred by

translating the moderate mental impairments that he assessed at step three of his analysis

into work related restrictions at step four, without citing to or relying on the opinion of a

medical professional.  (Pl. Mem. (Docket No. 13) at 10-11).  The plaintiff is correct that

the ALJ, as a lay person, is "not qualified to interpret raw medical data in functional

terms" and must rely on medical opinion to support his RFC determination.  Nguyen, 172

F.3d at 35.  See also Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427,

430 (1st Cir. 1991) ("Since bare medical findings are unintelligible to a lay person in

terms of residual functional capacity, the ALJ is not qualified to assess claimant's

residual functional capacity based on the bare medical record").  However, the plaintiff's

contention that the ALJ interpreted the medical data on his own, and failed to provide

support for his RFC determination, is without merit.  Although the ALJ stated that he had

"translated" his findings at step three into work related functions in his RFC assessment,

a complete review of his decision, as well as relevant portions of the underlying record,

demonstrates that the ALJ relied on the opinions of the state agency psychologists, Dr.

Robbins and Dr. Derecho, to support his findings regarding Price's mental RFC.

-15-

### The Consulting Psychologist Opinions

The record shows that on February 4, 2010, Dr. Robbins performed a review of the record relating to the plaintiff's mental impairments and completed an assessment of Price's mental RFC.  (Tr. 335-51).  After reviewing the medical evidence pertaining to Price's treatment for his mental health conditions, Dr. Robbins concluded that the plaintiff had a long history of polysubstance abuse, which exacerbated his chronic mood disorder and led to episodic suicidal ideation requiring brief hospital admissions, as well as to criminal activity, incarceration, poor personal care, poor judgment, homelessness, and an inability to sustain employment.  (Tr. 351).  He further concluded that there was "no [indication] of a co-morbid ongoing major mood or anxiety disorder" and that the plaintiff was not psychotic or cognitively impaired.  (Id.).

Dr. Robbins completed a psychiatric review technique form ("PRTF") in which he determined that Price met combined Listings 12.04 (affective disorders) and 12.09 (substance addiction disorders).  (Tr. 339-49).  He also completed a mental residual functional capacity assessment in which he assessed Price's mental RFC in the absence of substance abuse.  (Tr. 335-37).  Therein, Dr. Robbins  determined in relevant part that if the plaintiff were to abstain from substances, he would have no significant limitations in his ability to understand and remember simple and detailed instructions, in his ability to interact with co-workers, supervisors and the general public, or in his ability to respond to changes in the work setting.  (Tr. 335-37).  Furthermore, Dr. Robbins concluded that

absent the use of substances, Price would "be able to sustain adequate pace[,] persistence and concentration for simple tasks[.] (Tr. 337).

Subsequently, Dr. Derecho conducted her own review of the medical evidence relating to Price's mental impairments. (Tr. 368). On March 25, 2010, she provided an opinion in which she affirmed the opinions set forth by Dr. Robbins in his PRTF and mental RFC assessment. (Id.).

### The ALJ's Reliance on the Opinions of Drs. Robbins and Derecho

As described above, the ALJ relied on the opinions of Dr. Robbins and Dr. Derecho to support his findings regarding the plaintiff's mental RFC. Specifically, in his discussion regarding the basis for his RFC assessment, the ALJ described Dr. Robbins' findings and cited the opinion of Dr. Derecho. (Dec. 8-9; Tr. 14-15). He also stated that he was giving "great weight" to the opinions of the state agency psychologists, explaining that Dr. Robbins had "provided a thorough and persuasive explanation for his assessment[.]" (Dec. 11; Tr. 17). In fact, the ALJ's finding that absent substance abuse, Price "could understand and remember simple and complex instructions, could concentrate for two-hour periods over the course of an eight-hour day on simple tasks, could interact appropriately with coworkers and supervisors and could adapt to changes in the work setting[,]" is nearly identical to Dr. Robbins' mental RFC assessment. (Compare Finding #6, Tr. 13 with Tr. 335-37). The only difference is that Dr. Robbins placed no limitations on Price's ability to concentrate on simple tasks while the ALJ opined that Price would be restricted to two-hour periods of concentration, a limitation that was more

favorable to the plaintiff.  Therefore, the ALJ's mental RFC assessment was supported by

substantial evidence in the record.

###    C.    Hypothetical Questions to the VE

The plaintiff also contends that the Commissioner failed to meet his burden at step

five of the analytical process because the ALJ relied on the VE's response to a hypo-

thetical question that contained the ALJ's "translation" of medical evidence into work

restrictions and failed to reflect an accurate assessment of Price's mental limitations.  (Pl.

Mem. at 11-12).  "The opinion of a vocational expert that a Social Security claimant can

perform certain jobs qualifies as substantial evidence at the fifth step of the analysis" as

long as the opinion is "in response to a hypothetical that accurately describes the

claimant's limitations."  Sousa v. Astrue, 783 F. Supp. 2d 226, 235 (D. Mass. 2011).  In

the instant case, the VE's opinion that an individual with Price's limitations could

perform certain jobs was based on a hypothetical question which incorporated the mental

RFC assessed by the ALJ in his decision.  (See Tr. 57-59).  Because that RFC was

supported by substantial evidence, the VE's testimony, and the ALJ's reliance on it, were

proper.

## IV.  CONCLUSION

For all the reasons detailed herein, this court finds that the Commissioner's

decision that Price was not disabled within the meaning of the Social Security Act was

supported by substantial evidence.  Therefore, the plaintiff's "Motion to Reverse the

Decision of the Commissioner of Social Security" (Docket No. 12) is DENIED and the

"Defendant's Motion to Affirm the Commissioner's Decision" (Docket No. 15) is

ALLOWED.

                                              / s / Judith Gail Dein
                                             Judith Gail Dein
                                             U.S. Magistrate Judge